UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ANN ELIZABETH THEBERGE-DEER, )
)
        Plaintiff, )
)
vs. ) CASE NO. 08-CV-2-FHM
)
MICHAEL J. ASTRUE, )
Commissioner of the )
Social Security Administration, )
)
        Defendant. )

## ORDER

Plaintiff, Ann Elizabeth Theberge-Deer, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's January 24, 2005 applications for disability insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held January 22, 2007. By decision dated February 20, 2007, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on November 9, 2007. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 50 years old at the time of the hearing. [R. 234].  She claims to have been unable to work since January 1, 2004, due to Hepatitis C, Degenerative Disk Disease, Depression and Carpal Tunnel Syndrome. [R. 236-246].  The ALJ determined that Plaintiff has severe impairments consisting of hepatitis C with increased viral loads and degenerative disk disease of the cervical spine. [R. 22].  He found that Plaintiff retains the residual functional capacity (RFC) to perform sedentary work with the avoidance of work above shoulder level. [R. 23].  Based upon the testimony of a Vocational Expert (VE), the ALJ determined that with this RFC, Plaintiff could return to her past relevant work (PRW) as a receptionist, billing clerk, typist and file clerk. [R. 25]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 26].  The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts two allegations of error: 1) that the ALJ failed to properly evaluate the severity of Plaintiff's depression at step two because he did not apply the special technique for evaluation of mental impairments as required, which permitted him to propound an improper hypothetical to the VE, that impacted on his decision at step four

and he failed to properly consider the opinions of examining and reviewing sources; 2) that the ALJ failed to perform a proper credibility determination because he relied heavily on boilerplate passages, misconstrued some of the medical evidence and failed to consider some of the Luna factors that he should have considered. [Plaintiff's Brief, Dkt. 15]. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for further proceedings.

## **Medical History**

Plaintiff was diagnosed with hepatitis C sometime between in 1995 and 1997.[2] [R. 112-122, 152, 154]. Plaintiff underwent treatment with interferon and ribavarin for 11 months in 2005. Six months after cessation of the treatment, Plaintiff's blood work showed high viral load. [R. 218]. She was found to have relapsed in September 2006 and was diagnosed with cirrhosis (permanent scarring of the liver) in October 2006.[3] [R. 181, 189].

In addition to a claim of disability due to physical symptoms associated with hepatitis C, Plaintiff has asserted a severe mental impairment of depression. [R.41, 55, 57, 60, 83, 85, 86, 88, 89, 106, 107, 110, 240-241]. The medical record indicates that depression was initially listed among the symptoms associated with Plaintiff's hepatitis but later was shown

---

[2] Hepatitis C is a viral disease that leads to swelling (inflammation) of the liver. It is caused by the virus HCV. In many cases, no symptoms of the disease are reported until cirrhosis has developed. Symptoms can include abdominal pain (right upper abdomen), ascites, bleeding varices, dark urine, fatigue, generalized itching, jaundice, loss of appetite, low-grade fever, nausea, pale or clay-colored stools and vomiting. *See* medical encyclopedia online at http://www.nlm.nih.gov/medlineplus/ency/article/000274.htm

[3] Some patients with hepatitis C benefit from treatment with interferon alpha or a combination of interferon alpha and ribavirin (an antiviral medication). Interferon is given by injection just under the skin and has a number of side effects, including depression, fatigue, fever, flu-like symptoms, headache, irritability, loss of appetite, low white blood cell counts, nausea, thinning hair and vomiting. A "sustained response" to the treatment means the patient remains free of hepatitis C virus 6 months after stopping treatment. This does not mean the patient is cured but that the levels of active hepatitis C virus in the body are very low and are probably not causing more or as much damage *Id.*

3

in the treatment records as a separate diagnosis. [R. 143, 148, 150, 152, 154, 155, 180, 181, 189, 195, 201, 203, 217, 220]. Plaintiff was variously prescribed Celexa, Lexapro and, for a short period, Wellbutrin.[4] *Id.* When Plaintiff complained of worsening depression, her prescribed antidepressant dosage was increased. [R. 142, 148, 181, 217].

Steven Y.M. Lee, M.D., examined Plaintiff on behalf of the Social Security Administration on April 22, 2005. [R. 130-134]. At the time of this exam, Plaintiff was receiving therapy for hepatitis C at OU Medical Center and experiencing improvement with her last blood test revealing no evidence of circulating virus. [R. 130]. Plaintiff reported her medication caused depression, fatigue and headaches. She also complained of insomnia secondary to muscular spasms of recumbency at night that affects both legs. Review of systems produced negative results except for the central nervous system which Dr. Lee characterized as: "Symptoms of depression." *Id.* Dr. Lee diagnosed: 1. Hepatitis C infection, by history; 2. Fatigue, by history; 3. Headache, by history; and 4. Insomnia, by history.

Plaintiff was examined by Stephanie C. Crall, Ph.D., on behalf of the agency on April 27, 2005. [R. 138-141]. Dr. Crall indicated Plaintiff was diagnosed with hepatitis C in 1997, which caused fatigue, daily headaches and nausea. [R. 138]. Plaintiff also reported episodes of depression and began taking antidepressant medication in 2001. [R. 138]. Dr. Crall conducted a mental status examination and, based upon clinical presentation as well

---

[4] Celexa (citalopram) is an antidepressant in a class called selective serotonin reputake inhibitors (SSRIs). Lexapro (escitalopram) is also an SSRI and is used to treat longterm (6 months or longer) depression and generalized anxiety disorder. Wellbutrin (bupropion) is an antidepressant and is also prescribed to assist in smoking cessation. *See* drug information online at: http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html

as Plaintiff's history and symptoms, Dr. Crall diagnosed: Major Depressive Disorder, Mild, Recurrent and she assessed a GAF score of 60.[5]

The record also contains an undated Psychiatric Review Technique check-list form signed by Janice B. Smith, Ph.D. [R. 158-171]. Dr. Smith noted documentation of factors of an affective disorder evidenced by depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance and decreased energy. [R. 161]. She rated Plaintiff's degree of functional limitation as "mild" in: 1) restriction of activities of daily living; 2) difficulties in maintaining social functioning; and 3) difficulties in maintaining concentration, persistence or pace. [R. 168]. She found no episodes of decompensation. *Id.* Dr. Smith wrote:

> 49 year old female under treatment for hepatitis C and depression. Primary symptoms are fatigue, headaches and depression. Mental status evaluation in April 2005 show that [intellectual] and cognitive function are intact. She is on medication which is reported to be effective. She admits to sad moods, insomnia, low energy, poor concentration and loss of interests. She is not suicidal. Daily routine functioning and social functioning appear to be intact. Contributing factors are physical condition, domestic relationship and unemployment. Diagnosis is: Major Depressive Disorder, Mild, Recurrent. The severity of her condition does not cause more than a minimal impairment to her ability to work.

[R. 170]. Dr. Smith concluded Plaintiff's medically determinable mental impairment was not severe. [R. 158].

---

[5] A global assessment of functioning (GAF) score "is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." A GAF score of 51-60 indicates moderate symptoms, (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) (DSM-IV-TR).

## The ALJ's Decision

With regard to Plaintiff's claim of a mental impairment, the ALJ said:

> The claimant's doctors have noticed Ms. Theberge suffers from depression. But she has not been hospitalized for her depression and the medical record does not indicate that she has been in therapy or counseling for it. Antidepressants are taken by the claimant. A consultative evaluation gave her a [GAF] score of 60. The score relates to moderate difficulty in social and/or occupational functioning. Yet the medical record does not justify making that conclusion. For example, a medical consultant who reviewed the record concluded that Ms. Theberge's depressive disorder did not cause more than a minimal impairment of her ability to work. The claimant's depression was considered "stable" in a June 6 2006 progress note from OU Physicians.

[R. 22-23]. This is all the ALJ had to say about Plaintiff's depression.

## Discussion

The agency regulations lay out the process for evaluation of mental impairments. See 20 C.F.R. §§ 404.1520a; 416.920a. There is a specific two-step procedure that the Commissioner must follow when determining whether a claimant has a severe mental impairment. The Commissioner "must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). Then the Commissioner evaluates the impact that the mental impairment has on the claimant's ability to function under 20 C.F.R. § 404.1520a(b)(2), et seq. The agency is required "to consider ⋯ all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." *Id.*§§ 404.1520a(c)(1); 416.920a(c)(1). The claimant's impairment is then rated by its effect on four functional areas: activities of daily living; social functioning;

concentration, persistence, or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to document his evaluation of these functional factors in the body of his decision, *Id.* §§ 404.1520a(e); 416.920a(e), making specific findings as to the evidence relied upon and the degree of limitation in each of these areas. *Id.*

Although the Court does not reweigh evidence or try the issues de novo, *Grogan*, 399 F.3d at 1262 (citing *Sisco v. U.S. Dept. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Grogan*, *id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Additionally, while the ALJ is free to choose between two conflicting reports by consultative examiners, *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (ALJ's task to resolve conflicts in the medical evidence) he must explain the weight he accorded the opinions and his reasons for that weight. 20 C.F.R. § 416.927(f)(2)(ii); *Gotcher v. U.S. Dept of Health & Human Servs.*, 52 F.3d 288, 290(10th Cir. 1995) (detailing how medical source opinion evidence is weighed).

In this case, the Court concludes that the record contains sufficient evidence of a medically determinable mental impairment which allegedly impacts Plaintiff's ability to work that the ALJ's duty to follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a, was triggered. The requirement to document the functional factors in the body of his decision is clearly stated in the regulations. The ALJ did not comply with that requirement in this case. Nor did he state that he had "adopted the four-part analysis made by the state examining physician which showed

that Plaintiff did not have a severe mental impairment" as argued by counsel for the Commissioner in his response brief. [Dkt. 16, p. 4]. This failure requires reversal. *See Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir.1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly.").

## Conclusion

The ALJ did not document his findings as to Plaintiff's claim of mental impairment in accordance with 20 C.F.R. §§ 404.1520a and 416.920a. The ALJ also did not state what weight, if any, he accorded the opinion of the examining psychologist or the opinion of the non-examining consultative psychologist and his reasons for doing so. Because the ALJ's credibility determination may need to be revisited depending on the resolution of Plaintiff's claim of mental impairment, the Court does not address Plaintiff's allegation of error regarding the credibility analysis. Further, in assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." See *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). Because Plaintiff demonstrated the existence of a mental impairment, discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence must be included in the RFC assessment.

The decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for further proceedings in accordance with this order.

Dated this 24th day of February, 2009.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE